IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEAN HARRIS,                                    )
                                                )
                        Petitioner,             )
                                                )
        v.                                      )        Case No. 25-3006-JWL
                                                )
Warden, FCI-Leavenworth,                        )
                                                )
                        Respondent.             )
                                                )
_____)

**MEMORANDUM AND ORDER**

Petitioner filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, in which he challenges the denial of certain credits under the First Step Act (FSA). For the reasons set forth below, the Court **denies** the petition.

On April 22, 2021, petitioner was sentenced to a term of imprisonment of 144 months, following his conviction in federal court of a drug crime. From that date until November 17, 2021, when he arrived at his designated Bureau of Prisons (BOP) facility, FCI-Texarkana, petitioner was in the custody of the United States Marshals Service (USMS). From April 22, 2021, to May 19, 2021, petitioner was held at FCI-Fort Worth, a BOP facility; and from May 19, 2021, to November 17, 2021, petitioner was held by the USMS at non-BOP facilities. In 2024, petitioner was transferred to FCI-Leavenworth, in this judicial district, where he is presently imprisoned.

On January 14, 2025, petitioner filed the instant petition. Petitioner alleges that the BOP has denied him FSA credits that he earned between the date of his sentencing and the

date of his arrival at his designated BOP facility. Respondent has filed an answer to the petition, in which she denies that petitioner is entitled to FSA credits for that period. Petitioner has filed a traverse in support of the petition, which is therefore ripe for ruling.

The FSA commanded the Attorney General to develop a system to do the following: assess and determine the recidivism risk for each prisoner at intake and periodically thereafter; determine and provide guidance concerning the type and amount of "evidence-based recidivism reduction" (EBRR) programming and "productive activities" appropriate for each prisoner, and assign each prisoner to such programming based on individual needs; and determine when to provide incentives and rewards for successful participation in EBRR programs or productive activities. *See* 18 U.S.C. § 3632(a), (b). As part of the incentives for prisoners under this system, the FSA further provides that a prisoner (unless in one of several categories of ineligible prisoners) who "successfully completes" EBRR programming or productive activities shall earn certain time credits that may be applied eventually toward time in prerelease custody or supervised release. *See id.* § 3632(d)(4). By his present petition, petitioner claims that he is entitled to such FSA credits earned before his arrival at his designated BOP facility.

District courts have split concerning whether a prisoner may earn credits before arrival at the designated facility. In the cases cited by petitioner, the BOP relied on its regulation that states that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served)." *See* 28 C.F.R. § 523.42(a). With respect to that issue, the FSA states that a prisoner may not earn

credits for a program completed "prior to the date that the prisoner's sentence commences under section 3585(a)." *See* 18 U.S.C. § 3632(d)(4)(B). Section 3585(a) in turn provides that a sentence commences on the date the prisoner "is received into custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." *See id.* § 3585(a). Thus the BOP regulation, by defining the sentence commencement date to exclude time prior to arrival at the prisoner's designated facility for the purpose of FSA credit eligibility, directly contradicts the plain language of the FSA, which defines that date to include time in custody awaiting transportation to the designated facility. This Court therefore joins the courts cited by petitioner in concluding that this portion of the regulation is invalid and cannot justify the denial of FSA credits for programs completed by a prisoner prior to arrival at the designated facility. *See Gale v. Warden FCI Milan*, 2025 WL 223870, at *4 (E.D. Mich. Jan. 16, 2025) (citing cases); *Sharma v. Peters*, 2024 WL 4668135, at *5-7 (M.D. Ala. Nov. 4, 2024); *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 217-18 (D.N.H. 2023).[1]

That conclusion does not end the inquiry, however, as the FSA imposes other requirements for the earning of time credits. *See, e.g.*, *Stevens v. Jacquez*, 2024 WL

---

[1] The Court, however, does not agree that through this eligibility provision the FSA "clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits," as one court stated. *See Yufenyuy*, 659 F. Supp. 3d at 218. The FSA merely prohibits the earning of credits prior to federal custody upon sentencing. That does not necessarily mean that a prisoner is entitled to earn credits as of that date; as discussed below, the required programming must be tied to an assessment completed for the prisoner, and there is no requirement that that assessment be conducted immediately upon sentencing.

3200546, at *4-5 (D. Or. June 25, 2024) (noting conflict between regulation and FSA, but applying other requirements to deny request for credits for pre-arrival programs); *Dane v. Bayless*, 2024 WL 5150683, at *3-5 (N.D. W. Va. Nov. 20, 2024) (following *Stevens*), *report and recommendation adopted*, 2024 WL 5150650 (N.D. W. Va. Dec. 17, 2024); *Harper v. Warden, FCI Waseca*, 2024 WL 3164981, at *5-6 (D. Minn. May 28, 2024), *report and recommendation adopted*, 2024 WL 3163730 (D. Minn. June 25, 2024).  Many courts that have ruled in favor of prisoners on this issue considered only validity of the BOP regulation, without considering these other requirements, and thus those opinions are not persuasive.  *See, e.g.*, *Gale*, 2025 WL 223870, at *4; *Heath v. Knight*, 2024 WL 5198863, at *4-5 (D.N.J. Dec. 23, 2024); *Jobin v. Warden, FCI-Mendota*, 2024 WL 1367902, at *3-4 (E.D. Cal. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 2786898 (E.D. Cal. May 30, 2024), *appeal dismissed*, 2024 WL 4723318 (9th Cir. Oct. 17, 2024); *Patel v. Barron*, 2023 WL 6311281, at *4-5 (W.D. Wash. Sept. 28, 2023); *Huihui v. Derr*, 2023 WL 4086073, at *3-5 (D. Haw. June 20, 2023); *Umejesi v. Warden, FCI Berlin*, 2023 WL 4101471, at *3-4 (D.N.H. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 4101455 (D.N.H. Mar. 30, 2023); *Yufenyuy*, 659 F. Supp. 3d at 217-18.

Under the FSA, a prisoner earns time credits only if he or she "successfully completes" EBRR programming or productive activities.  *See* 18 U.S.C. § 3632(d)(4)(A).  Moreover, the system mandated by the FSA is to be used to assess each prisoner's risk of recidivism individually and to determine and assign appropriate programming based on that assessment.  *See id.* § 3632(a); *see also id.* § 3632(b) ("The System shall provide guidance on the type, amount, and intensity of [EBRR] programming and productive

activities that shall be assigned for each prisoner…").  Thus, under any reasonable interpretation, the FSA mandates credits only for successful completion of EBRR programming and productive activities that have been determined as appropriate and assigned to the prisoner in accordance with the particularized assessment of the prisoner's risk of recidivism.  As one court put it:

> There is nothing in the text of the FSA that can be read as suggesting that the EBRR programming to be "successfully complete[d]" could refer to anything other than the assigned EBRR programming described in the immediately adjacent sections of the statute.  Reading the statute otherwise would strain the statutory language.  The FSA is plainly designed to, and does, create a system whereby programming is matched to prisoners' needs, and credits are meted out for successful participation in such tailored programming (and to link [credits] to the successful completion of such programming) if participation in other programming (of whatever description) could earn a prisoner [credits] without regard to whether that programming is appropriate to that prisoner's needs.

*See Dunlap v. Warden FMC Devens*, 2024 WL 5285006, at *7 (D. Mass. Dec. 13, 2024), *report and recommendation adopted*, 2025 WL 35248 (D. Mass. Jan. 6, 2025); *see also Stevens*, 2024 WL 3200546, at *4.  It is also clear that the FSA, in charging the Attorney General to develop the system to assess prisoners and to determine and assign appropriate programming through which prisoners may earn time credits, has granted the BOP great discretion with respect to such matters.  *See Dunlap*, 2025 WL 25248, at *1 ("Congress left certain lacunae for the administering agency to fill.  As pertinent here, the FSA leaves it to the BOP to implement rules for determining when an inmate is "successful[ly] participating" in BOP-approved programming.").

In administering this FSA system, the BOP has deemed "successful participation" under the FSA to require a determination by the BOP that the prisoner has participated in

EBRR programs or productive activities that it has recommended based on the prisoner's individualized risk assessment. *See* 28 C.F.R. § 523.41(c). The BOP conducts a prisoner's assessment after arrival at the designated facility, and respondent notes that that policy makes sense in light of the fact that a prisoner is often held at non-BOP facilities prior to that arrival (as in petitioner's case). In the present case, petitioner's risk of recidivism had not yet been assessed, and he had not yet been assigned any appropriate programming, prior to his arrival at his designated facility; accordingly, petitioner cannot have successfully completed EBRR programming or productive activities for which he could earn credits.

Moreover, petitioner has provided no evidence and has given very little information concerning the alleged productive activities for which he seeks FSA credits. He states in his petition only that prior to his arrival at the designated facility in November 2021, he "held a job as an orderly" and completed a survey necessary for the eventual participation in FSA programming. Respondent has provided evidence, however, that the BOP does not consider either the completion of such surveys or mere employment at a facility to constitute approved EBRR programming or productive activity. At any rate, petitioner has not provided any details or evidence from which any calculation of credit could be made, even if such activities had been later approved for credit.[2] Accordingly, petitioner has

---

[2]    In a hypothetical case, a prisoner might have participated in the same programming at a BOP facility prior to arrival at his or her designated facility that is later approved for credit at the designated facility. The Court need not address whether a prisoner might be entitled to credit in that situation, as in the present case petitioner, who was held primarily in non-BOP facilities, has not shown that he participated in any such programming prior to arrival at his designated facility.

failed to show that he has been wrongfully denied FSA credit for successful completion of approved EBRR programming or productive activities. *See, e.g.*, *Stevens*, 2024 WL 3200546, at *5 (petitioner presented no evidence that he had successfully participated in programming to justify credit). The Court therefore denies the petition.

IT IS THEREFFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **denied**.

IT IS SO ORDERED.

Dated this 9th day of April, 2025, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge

7